## Cheryl YOUNGMAN *v.* STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

97-1563                                        971 S.W.2d 248

Supreme Court of Arkansas
Opinion delivered July 9, 1998

[Petition for rehearing denied September 10, 1998.*]

---

\* Corbin, J., would grant.

*Grisham A. Phillips* and *Curtis E. Rickard*, for appellant.

*Boswell, Tucker, Brewster & Hicks*, by: *Clark S. Brewster*, for appellee.

W.H. "DUB" ARNOLD, Chief Justice. Appellant, Cheryl Youngman, brings the instant appeal challenging the Saline County Circuit Court's grant of appellee, State Farm Mutual Automobile Insurance Company's summary-judgment motion. Our jurisdiction is authorized pursuant to Ark. Sup. Ct. Rule 2-4 (1998). Youngman contends that the specific points raised on appeal involve issues of substantial public interest, which need clarification or development of the law or overruling of precedent, specifically, *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968). Finding no reversible error, we affirm the trial court's grant of summary judgment in favor of appellee.

## I.  Facts

The facts in this case are undisputed.  On August 13, 1995, Youngman, a passenger in her mother's pick-up truck, rode south on Highway 67, near the highway's intersection with River Road. Preston O. Whitney, traveling in the opposite direction, lost control of his car and drove across the highway centerline, striking the pick-up truck.  Following the accident, Youngman sought recovery for her injuries from Whitney, an uninsured motorist, and from Nationwide Insurance Company and the appellee, State Farm.

Two distinct written agreements are of significance in this appeal.  First, Youngman's mother insured her pick-up truck via a Nationwide Insurance Company policy that provided uninsured-motorist bodily-injury coverage in the amount of $25,000 per person and $50,000 per accident.  The parties agree that the Nationwide policy provided the primary uninsured-motorist coverage.  Second, Youngman had a policy of liability insurance with the appellee, State Farm.  Like the Nationwide policy, the State Farm policy provided for uninsured-motorist bodily-injury coverage in the amount of $25,000 per person and $50,000.00 per occurrence.

However, the State Farm policy contained an "other-insurance" or "excess-escape" clause, authorizing State Farm to pay uninsured benefits only to the extent that the State Farm policy limit exceeded the primary coverage, here, the Nationwide policy.  Specifically, the relevant portion of the State Farm policy states:

> *If There Is Other Uninsured Motor Vehicle Coverage*
>
> . . . .
>
> 3.  If the *insured* sustains *bodily injury* while *occupying* a vehicle not owned by *you, your spouse* or any *relative,* this coverage applies:
>     a.  as excess to any uninsured motor vehicle coverage which applies to the vehicle as primary coverage, but
>     b.  only in the amount by which it exceeds the primary coverage.

Additionally, "relative" is defined as "a *person* related to *you* or *your spouse* by blood, marriage or adoption who lives with *you*." Notably, appellant's mother, the pick-up truck driver, did not live with Youngman and was not a "relative" under the policy.

Prior to Youngman's suit in the circuit court, Nationwide paid her its policy's limit of $25,000 in uninsured-motorist benefits. Subsequently, she sought to recover $25,000 in uninsured-motorist benefits under the State Farm policy. State Farm moved for summary judgment on the basis of its other-insurance clause, and, in an order filed January 21, 1997, the trial court granted State Farm's motion. However, in a judgment filed February 14, 1997, the trial court awarded Youngman damages of $69,193.94, an amount in excess of both insurance policies' limits, to be payable by Whitney, the uninsured motorist. Youngman was also awarded ten percent interest and costs.

Youngman then appealed the trial court's order granting State Farm's summary-judgment motion. In an unpublished opinion dated December 17, 1997, the Court of Appeals affirmed the summary-judgment grant, relying primarily on the authority of a Court of Appeals decision involving language nearly identical to State Farm's other-insurance clause. *See State Farm Fire & Casualty Co. v. Amos*, 32 Ark. App. 164, 798 S.W.2d 440 (1990). Moreover, noting the necessity of following precedent, the appellate court reasoned that when an insurance policy provision is in accord with the uninsured-motorist insurance statute, the provision cannot be contrary to public policy. *See Aetna Ins. Co. v. Smith*, 263 Ark. 849, 568 S.W.2d 11 (1978).

## II.   *Petition for review*

From the Court of Appeals' decision, we granted Youngman's petition for review. When we grant a petition to review a case decided by the Court of Appeals, we review it as if it was originally filed in this Court. *Malone v. Texarkana Public Schools*, 333 Ark. 343, 969 S.W.2d 644 (1998) (citing *Williams v. State*, 328 Ark. 487, 944 S.W.2d 822 (1997)). On appeal, we consider the trial court's grant of State Farm's summary-judgment motion.

### III. Summary-judgment motion

■ Youngman's sole point on appeal contests the trial court's grant of State Farm's motion for summary judgment. In reviewing summary-judgment cases, this Court need only decide if the trial court's grant of summary judgment was appropriate based on whether the evidence presented by the moving party left a material question of fact unanswered. Further, the moving party always bears the burden of sustaining a motion for summary judgment. All proof must be viewed in the light most favorable to the resisting party, and any doubts must be resolved against the moving party. The moving party is entitled to summary judgment if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. Ark. R. Civ. P. 56 (1998); *Robert D. Holloway, Inc. v. Pine Ridge Add'n Resid. Prop. Owners*, 332 Ark. 450, 966 S.W.2d 241 (1998) (citing *McCutchen v. Huckabee*, 328 Ark. 202, 943 S.W.2d 225 (1997)).

The parties agree that there are no disputed facts. Accordingly, our review must focus on the trial court's application of the law to those undisputed facts. Significantly, appellant concedes that under our current case law, she cannot recover benefits from State Farm. Additionally, she concedes that both this Court and the Court of Appeals have addressed, on several occasions, the precise issue of the validity of other-insurance clauses, have decided the issue adversely to the appellant, and that the law is well settled. Nevertheless, Youngman disagrees with the trial court's reliance on case law following the position this Court adopted in *M.F.A. Mutual Ins. Co. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968). She suggests that the *Wallace* decision reflects a now minority-jurisdiction position. On the other hand, State Farm argues that our case law is controlling precedent, that the appellant has raised no issue of first impression justifying a break from that precedent, and that we should affirm. We agree.

■ We are bound to follow prior case law under the doctrine of *stare decisis*, and that policy is designed to lend predictability and stability to the law. *State of Arkansas Office of Child Support*

*Enforcement v. Mitchell*, 330 Ark. 338, 343, 954 S.W.2d 907 (1997) (citing *Parish v. Pitts*, 244 Ark. 1239, 1252, 429 S.W.2d 45, 52 (1968) (superseded by statute on other grounds)). In *Parish v. Pitts*, this Court held that "[p]recedent governs until it gives a result so patently wrong, so manifestly unjust, that a break becomes unavoidable." *Mitchell*, 330 Ark. at 343 (quoting *Parish*, 244 Ark. at 1252). Our test is whether adherence to the rule would result in "great injury or injustice." *Mitchell*, 330 Ark. at 343 (quoting *Independence Fed. Bank v. Webber*, 302 Ark. 324, 331, 789 S.W.2d 725, 730 (1990)). The instant facts do not warrant such a break from precedent.

In *Wallace*, this Court held that other-insurance clauses, which prevent the stacking of multiple uninsured-motorist policies, are not repugnant to our state statute requiring uninsured-motorist coverage. This Court also noted that our uninsured-motorist coverage act, now codified at Ark. Code Ann. § 23-89-403 (Supp. 1997), was not designed to provide an insured with greater protection than would have been available had the insured been injured by a driver with a policy containing the minimum statutory limits required by the act. Specifically, section 23-89-403(a)(1) provides:

> No automobile liability insurance covering liability arising out of the ownership, maintenance, or use of any motor vehicle shall be delivered or issued for delivery in this state with respect to any motor vehicle registered or principally garaged in this state unless *coverage* is provided therein or supplemental thereto and is *not less than limits described in § 27-19-605, . . . , for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury*, sickness, or disease, including death, resulting therefrom.

(Emphasis added.) Section 27-19-605 requires minimum coverage of $25,000 per person and $50,000 per accident. Here, both the Nationwide and State Farm policies provided coverage consistent with the requirements of sections 23-89-403 and 27-19-605.

Shortly after the *Wallace* decision, this Court upheld an other-insurance clause in *Harris v. Southern Farm Bureau Casualty Ins. Co.*, 247 Ark. 961, 448 S.W.2d 652 (1970). In *Harris*, this Court acknowledged that *Wallace* was controlling precedent and

reasoned that courts may not expand contracts beyond their terms and the parties' intent. Here, the parties agree that State Farm's other-insurance clause is unambiguous and identical to the clauses previously upheld by this Court.

The principle established in *Wallace*, upholding other-insurance clauses, has been followed most recently in *State Farm Fire & Casualty v. Amos*, 32 Ark. App. 164, 798 S.W.2d 440 (1990), where the Court of Appeals found that the injured-insured was not entitled to recover $25,000 in uninsured coverage under the driver's insurance policy after she had already recovered $50,000 from the primary insurer that had insured the vehicle. Like the instant case, *Amos* involved an unambiguous, other-insurance clause.

■ In *State Farm Mut. Auto. Ins. Co. v. Beavers*, 321 Ark. 292, 901 S.W.2d 13 (1995), we considered a first-impression issue of stacking uninsured and *under*insured motorist coverages. Notably, this Court utilized a simple rule, suggested in a law review article, to analyze almost any stacking problem: "Read the Statute and Read the Policy!" *Beavers*, 321 Ark. at 295 (citing Douglass and Telegadis, *Stacking of Uninsured and Underinsured Motor Vehicle Coverages*, 24 U. RICH. L. REV. 87 (Fall 1989)). Applying that rationale here, the State Farm other-insurance clause contains unambiguous language that limits State Farm's liability to any amount in excess of the primary coverage.

We have consistently held that other-insurance clauses are consistent with the purposes of our uninsured-motorist statute. Recall that the purpose of section 23-89-403 is to put the injured party in as good a position as it would have been in had the uninsured motorist been minimally insured as required by the statute. Here, appellant merely relies on persuasive authority from other jurisdictions to support overruling our existing case law. She cites Widiss, *Uninsured and Underinsured Motorist Insurance*, Sec. 13.4, p. 563 (2d Ed. 1992), for the proposition that Arkansas' acceptance of other-insurance clauses is "clearly a minority view." According to Widiss, thirty-six states have rejected other-insurance clauses on a variety of bases.

■ In any event, based upon the controlling authority of *Wallace* and its progeny, there are no grounds to reverse the trial court's grant of summary judgment and to depart from our precedent. Viewing the evidence in the light most favorable to Youngman, resolving any doubts against State Farm, and acknowledging that there is no genuine issue as to any material fact, the trial court did not err in finding that State Farm was entitled to a judgment as a matter of law. Accordingly, we affirm.

GLAZE, CORBIN, and THORNTON, JJ., dissent.

DONALD L. CORBIN, Justice, dissenting. Appellant Cheryl Youngman asks this court to reconsider its longstanding common-law rule against the stacking of multiple uninsured-motorist insurance policies. Appellant concedes that this court's previous holdings on this issue, beginning with *M.F.A. Mut. Ins. Co., Inc. v. Wallace*, 245 Ark. 230, 431 S.W.2d 742 (1968), are "stacked" against her, yet she asks us to revisit that rule. The majority refuses to do so, and for that reason, I respectfully dissent.

Appellant contends that this court should revisit this issue, given that the overwhelming majority of states now embrace the notion that an injured insured should be entitled to collect on multiple uninsured-motorist policies in order to fully compensate or indemnify the insured. *See* Alan I. Widiss, *Uninsured and Underinsured Motorist Insurance* § 13.6 (1990). She argues that such reasoning is applicable here, as the total damages awarded by the trial court were over $69,000 and her compensation from the uninsured coverage was a mere $25,000. She asserts that she is not looking for a windfall or looking to double her recovery; rather, she asks only to be compensated as fully as possible under both policies, as both policies had been paid for and were current.

This court should reconsider its position, first announced in *Wallace*, 245 Ark. 230, 431 S.W.2d 742, that "anti-stacking" or "other-insurance" clauses pertaining to uninsured-motorist coverage are not repugnant to this State's Uninsured Motorist Act or public policy. I, for one, believe that it is time to shed this common-law rule in favor of one that allows the insured to recover for

the full amount of his or her injuries to the extent that any applicable uninsured-motorist insurance coverages provide. Indeed, this court has recognized that the purpose of the Uninsured Motorist Act is to protect the insured, not the insurer, and thus preclude any windfall to the insurer by a reduction in benefits. *Hawkins v. State Farm Fire & Cas. Co.*, 302 Ark. 582, 792 S.W.2d 307 (1990). *See also Travelers Ins. Co. v. Nat'l Farmers Union*, 252 Ark. 624, 480 S.W.2d 585 (1972). Such coverage is for the specific purpose of protecting the insured from financially irresponsible motorists. *Pardon v. Southern Farm Bureau Cas. Ins. Co.*, 315 Ark. 537, 868 S.W.2d 468 (1994).

Moreover, when an insured purchases such coverage, he or she pays an added premium for such coverage. According to this court's decisions enforcing other-insurance clauses, however, he or she may be entitled to recover under such added coverage only in certain circumstances. In other words, the added premium is consistently being paid, but the coverage is less than consistently being provided. Should the insurers continue to benefit from receiving premium payments from their respective clients, only to deny payment of coverage to the clients where another insurer has already paid? It seems to me that, while we have gone out of our way to avoid giving a windfall to the insured, we have inadvertently provided a windfall to the insurers, by allowing them to benefit from the payment of additional premiums for uninsured-motorist coverage. Such windfall was never intended by the Uninsured Motorist Act. *See Hawkins*, 302 Ark. 582, 792 S.W.2d 307.

On the subject of other-insurance clauses, Professor Widiss has written:

> It is true, as some insurers have argued, that when the prorata provision of the Other Insurance clause [is] not enforceable, an insured who is covered by more than one uninsured motorist coverage is better off being injured by an uninsured motorist than being injured by a negligent motorist carrying the minimum coverage specified by the financial responsibility laws. *The conclusion which many insurance companies draw from this fact —*

> *that they should be allowed to reduce their liability — does not necessarily follow. A premium has been paid for each of the coverages and the insurance policy has been issued. It seems both equitable and desirable to permit recovery under more than one coverage until the claimant is fully indemnified. . . .*
>
> *The Other Insurance provision should be modified to extend the uninsured motorist coverage in multiple coverage situations when a claimant has not been fully indemnified.* To the extent that risk is thereby increased, companies can seek an increase in their premiums.

Widiss, *Uninsured and Underinsured Motorist Ins.* § 13.6 (emphasis added). I agree with Professor Widiss's recommendation.

In my dissent in *Clampit v. State Farm Mut. Auto. Ins. Co.*, 309 Ark. 107, 828 S.W.2d 593 (1992), I stated that I believed that anti-stacking (or other-insurance) clauses pertaining to underinsured-motorist coverage deny Arkansas policyholders their reasonable expectations of full compensation, and that such clauses accordingly violate public policy. I further believe that such clauses pertaining to uninsured-motorist coverage are equally violative of public policy, as they, too, deny policyholders their expectations of being fully compensated in the event they are injured by the actions of an uninsured motorist. I do not believe, however, that recovery under more than one policy should actually enrich or benefit an insured beyond his or her injuries.

In the present case, there is no danger of Appellant receiving a windfall or double recovery, as the limits of both uninsured policies amount to little more than two-thirds of the total damages sustained by her. Accordingly, I would reverse the decision by the trial court and award Appellant the full amount of recovery under both uninsured-motorist policies.

GLAZE and THORNTON, JJ., join in this dissent.