## HOLLAND GROUP, INC.
and Royal & SunAlliance Insurance Company *v.*
Brenda HUGHES and Travelers Insurance Company

CA 05-1376 237 S.W.3d 120

Court of Appeals of Arkansas
Opinion delivered June 14, 2006

*Anderson, Murphy & Hopkins, L.L.P.*, by: *Randy P. Murphy*, for appellants.

*Kenneth E. Buckner*, for appellee Brenda Hughes.

*Phillip Cuffman*, for appellee Travelers Ins. Co.

OLLY NEAL, Judge. In this appeal from the Arkansas Workers' Compensation Commission (Commission), appellants, Holland Group Incorporated and Royal & Sunalliance Insurance Company, argue that the Commission's decision to award appellee Brenda Hughes benefits was not supported by substantial evidence because her ulnar-neuropathy injury was not the major cause of her disability or need for treatment nor was it caused by rapid repetitive motion. In the alternative they argue that, even if the injury was compensable, it was the result of an aggravation of the June 21, 1999, injury rather than a recurrence. Appellees Brenda Hughes and Travelers Insurance Company maintain that the Commission's decision is supported by substantial evidence; however, Hughes has filed a cross appeal in which she asserts that the Commission's denial of her claim for a cervical injury was not supported by substantial evidence. We reverse and remand on direct appeal and affirm on cross appeal.

Hughes has been employed at Holland (formerly Binkley Industries) for over nine years. Her job entails working on a seat-rise jig, which is used to build small tractor-trailer parts. On June 21, 1999, Hughes sustained a compensable left-hand-carpal-tunnel injury and underwent surgery that was performed by Dr. P.B. Simpson, Jr. After a six-week recovery period, Hughes returned to Holland. She testified that, once she returned to the seat-rise jig, she began to experience pain again in her left arm and hand. The pain, she explained, was in her left arm and wrist and then went "all the way into my neck and shoulder." Thereafter, she sought treatment and an additional award of benefits.

At the hearing before the administrative law judge (ALJ), Hughes claimed that she sustained a compensable injury on February 28, 2003, for which she is entitled to reasonably necessary

medical treatment and temporary-total-disability benefits. Appellants maintained that Hughes did not sustain a compensable injury but argued in the alternative that, if she did, appellee Travelers Insurance Company rather than they would be liable for compensability because the February 28 incident would constitute a recurrence of the June 21, 1999, injury. Travelers responded that the new injury was an aggravation or a new injury; therefore, liability would rest with appellants. The ALJ determined that Hughes's February 28, 2003, injury was a recurrence for which Travelers was responsible and that Hughes was entitled to additional treatment and temporary-total-disability benefits. Travelers appealed to the Commission. After its de novo review, the Commission reversed the decision of the ALJ, instead finding that Hughes sustained a compensable ulnar nerve injury which became manifest while appellants were "on the risk"; that appellants were liable for reasonably necessary medical treatment; that Hughes did not sustain a compensable neck injury; and that Hughes did not prove she was entitled to temporary-total-disability benefits. It is from this decision that appellants and appellee/cross-appellant Hughes appeal.

In appeals involving claims for workers' compensation, our court views the evidence in a light most favorable to the Commission's decision and affirms the decision if it is supported by substantial evidence. *Wallace v. West Fraser South, Inc.*, 365 Ark. 68, 225 S.W.3d 361 (2006). Substantial evidence exists if reasonable minds could reach the Commission's conclusion. *Foster v. Express Personnel Servs.*, 93 Ark. App. 496, 222 S.W.3d 218 (2006). The issue is not whether the appellate court might have reached a different result from the Commission; if reasonable minds could reach the result found by the Commission, the appellate court must affirm the decision. *See Fayetteville Sch. Dist. v. Kunzelman*, 93 Ark. App. 160, 217 S.W.3d 149 (2005). Where the Commission denies a claim because of the claimant's failure to meet his burden of proof, the substantial evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Wallace, supra.* The Commission is not required to believe any witness, and it may accept and translate into findings of fact only those portions of the testimony that it deems worthy of belief. *Brotherton v. White River Area Agency*, 93 Ark. App. 432, 220 S.W.3d 219 (2005). The Commission may accept or reject medical opinions and determine their medical soundness and probative force. *Id.*

Appellants argue first that the Commission's decision was not supported by substantial evidence because Hughes's injury was neither the major cause of her disability nor the result of rapid repetitive motion. In the alternative, appellants contend that, if the injury was compensable, it was an aggravation of appellee's old injury, for which appellee Travelers would ultimately be liable. We need not reach appellants' argument as to whether or not Hughes's injury was the major cause of her disability or whether it was an aggravation or a recurrence because we hold that the Commission's decision that her injury was the result of both rapid and repetitive motion is not supported by substantial evidence.

Arkansas Code Annotated section 11-9-102(4)(A) (Repl. 2002) defines a compensable injury as:

> (i) An accidental injury causing internal or external physical harm to the body or accidental injury to prosthetic appliances, including eyeglasses, contact lenses, or hearing aids, arising out of and in the course of employment and which requires medical services or results in disability or death. An injury is "accidental" only if it is caused by a specific incident and is identifiable by time and place of occurrence;

> (ii) An injury causing internal or external physical harm to the body and arising out of and in the course of employment if it is not caused by a specific incident or is not identifiable by time and place of occurrence, if the injury is:

>> (a) Caused by rapid repetitive motion. Carpal tunnel syndrome is specifically categorized as a compensable injury falling within this definition;

>> (b) A back injury which is not caused by a specific incident or which is not identifiable by time and place of occurrence[.]

A compensable injury must be established by medical evidence supported by objective findings. Ark. Code Ann. § 11-9-102(4)(D) (Repl. 2002). A claimant seeking workers' compensation benefits for a gradual-onset injury must prove by a preponderance of the evidence that (1) the injury arose out of and in the course of his or her employment; (2) the injury caused internal or external physical harm to the body that required medical services or resulted in disability or death; and (3) the injury was a major cause of the disability or need for treatment. Ark. Code Ann. § 11-9-102(4)(A)(ii) and (E)(ii) (Repl. 2002).

In analyzing whether an injury is caused by rapid repetitive motion, the standard as set out in *Malone v. Texarkana Public Schools*, 333 Ark. 343, 969 S.W.2d 644 (1988), is a two-pronged test: (1) the tasks must be repetitive, and (2) the repetitive motion must be rapid. As a threshold issue, the tasks must be repetitive, or the rapidity element is not reached. *Westside High Sch. v. Patterson*, 79 Ark. App. 281, 86 S.W.3d 412 (2002). Arguably, even repetitive tasks and rapid work, standing alone, do not satisfy the definition; the repetitive tasks must be completed rapidly. *Id*. The issue of whether an injury meets the rapid repetitive motion requirement will ordinarily be a question of fact, not one of law; however, although a question of fact, the Commission must apply the appropriate law to the evidence to reach a conclusion. *Id*.

Here, the Commission's finding of rapid and repetitive motion was based partly on evidence from Dr. Frazier that Hughes's duties included "assembly line" work involving "repetitive grasping or lifting activities," which she might elect to leave for a "less repetitive type activity." The Commission also relied on Hughes's credible and extensive testimony concerning her duties as a welder. Hughes testified that:

> When working on the seat-rise jig, we have two side plates. We put the bottom plate in the jig, then take two side plates and I tack them in, and I've got two wire pads that I put one in the front and one in the back. I then take and mash the jig together, then I take the hammer and beat it until I know its right, and then I take the welding machine and tack one, two, three, one on each side and the bottom on the front and back. I do all this with my hands. I then turn the jig around and tack the back part, then when I turn it back around, I take it out. There are different sizes of jigs. The heaviest size is 0-8's which I assume would weigh approximately five to ten pounds. I do this kind of work all day, every day.

In determining whether a worker's injury was the result of repetitive and rapid motion, the appellate courts have required some showing of how rapidly the repetitive actions were performed. *See Hapney v. Rheem Mfg. Co.*, 342 Ark. 11, 26 S.W.3d 777 (2000) (Commission's denial of benefits reversed where movements repeated every twenty seconds); *Parker v. Atlantic Research Corp.*, 87 Ark. App. 145, 189 S.W.3d 449 (2004) (where the Commission found that appellant's job duties fell within the meaning of rapid repetitive motion, considering the multiple tasks that she was required to perform at high volume and with quick

and fast movements in a repetitive nature over the course of a sometimes ten-to-twelve hour shift, six to seven days a week, there was substantial evidence to support the Commission's finding that appellant's job duties required rapid repetitive motion); *Boyd v. Dana Corp.*, 62 Ark. App. 78, 966 S.W.2d 946 (1998) (a series of repetitive motions, performed 115 to 120 times per day separated by periods of only 1.5 minutes, constituted rapid motion within the meaning of the statute); *High Capacity Prods. v. Moore*, 61 Ark. App. 1, 962 S.W.2d 831 (1998) (movements repeated every fifteen seconds found to be sufficiently "rapid").

 In the instant case, although Hughes's testimony undoubtedly evidences that her work activities were repetitive, there is no evidence in this record to indicate that these activities were performed rapidly. Therefore, as reasonable minds could not reach the decision of the Commission, substantial evidence does not support its decision, and we are compelled to reverse and remand.

On cross appeal, Hughes argues that the Commission erred in determining that her neck injury was not compensable. She argues that her neck injury was the result of the specific incident that occurred on February 28, 2003. In the alternative, however, Hughes argues that her neck injury was the result of rapid and repetitive motion, an exception to the requirement of specific time and place. There is no merit in either of these assertions.

 Hughes's own testimony reflected that, on February 28, 2003, every time she would get ready to put a part in the jig, she would experience pain shooting up her arm. The pain, according to Hughes, was different that day because it traveled up to her neck and shoulders. This testimony did not identify a specific incident occurring nor did Hughes tell her treating physician that her pain was associated with any particular, specific incident. Thus, her own words belie the argument that the injury was caused by a specific, identifiable incident. Furthermore, because we have determined that there is no evidence that Hughes's work activities were rapid, her neck injury did not result from a gradual-onset injury.

Reversed and remanded on direct appeal; affirmed on cross appeal.

GLOVER and ROAF, JJ., agree.